UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

CASE NO: 07-3057-MLB

TODD CARLTON SMITH,

    Plaintiff,

vs.

TERRY WOODS,

    Defendant.
_____/



PLAINTIFFS' RESPONSE TO SHOW CAUSE ORDER

RENDERED BY THIS COURT ON FEBRUARY 18, 2009

COMES NOW THE PLAINTIFF, TODD CARLTON SMITH, in pro se., and moves this Honorable Court in the above styled cause, of the Plaintiffs' Response to Show Cause Order Rendered by this Court on February 18, 2009. The plaintiff hereby avers the following facts and grounds in support thereof:

STATEMENT OF FACTS

The plaintiff is a Federal and State prisoner serving his sentence in the State of Kansas Department of Corrections under Interstate Corrections Compact out of the State of Florida for his safety and protection.

In December of 1995 the plaintiff was convicted of the murder of a former member of the (STG) gang of Folk Nation in the Florida Department of Corrections. However, in October of 2000 the was an attempt taken by two gang members of Folk Nation to kill the plaintiff while he was asleep within his cell while incarcerated in the Florida D.O.C.

The plaintiff filed a Civil Rights Complaint against the authorities of the Florida Department of Corrections in November of 2000 for "deliberate indifference" under the Eighth Amendment, for subjecting the plaintiff to cruel and unusual punishment.

The authorities of the Florida D.O.C. and the plaintiff settled out of court in May of 2002 in Case No: 00-4370-Seitz, United States District Court for the Southern District of Florida and the settlement consisted of the plaintiff receiving Interstate Corrections Compact to another state for his safety and protection from future harm from the members of Folk Nation.

The plaintiff was tranferred to the State of Kansas Department of Corrections. However, through a leak in the adminsitration the plaintiffs' murder conviction of the former gang member became known to the prison gangs within the K.D.O.C. Wherefore, in March of 2003 after the plaintiff encountered problems with the gang members of Folk Nation at Hutchinson Correctional Facility, the plaintiff was transferred to Lansing Correctional Facility in April of 2003 for his protection.

However, after the plaintiff had been a Lansing for a couple of weeks he was set up by a former prison guard to be sexually assualted by the leader of the Kansas City Cripts whom are family to Folk Nation. Wherefore, the plaintiff requested protective custody and reported it to the authorities at Lansing Correctional Facility and the Florida Department of Corrections.

In October of 2003 the plaintiff filed a Civil Rights Complaint pursuant to 42 USC §1983 against the authorities of the Kansas Deartment of Corrections.. However, in June of 2005 this court found the plaintiffs' claims against the former prison

Page 2

guard to be true and granted the plaintiff $1.000 for actual damages and $5.000 for punitive damages, and dismissed the rest of the defendants of the Kansas Department of Corrections. The plaintiff appealed the decision to the Tenth Circuit Court of Appeals, See SMITH v. CUMMINGS, 445 F.3d 1254 (US 10th Cir. 2006).

However, the 10th Cir. remanded the plaintiffs' K.T.C.A. against the authorities of the Kansas Department of Corrections back back to the U.S. District Court. The Kansas D.O.C. authorities and the plaintiff reached an out-of court settlement on June 12, 2006. The settlement consisted of the plaintiff being transferred to Lansing Correctional Facility and placed in the Protective Management Unit for inmates that have to be separated from the inmates in general population for their protection. This unit is for the most serious protective needs. No inmates are suppost to have any access in general population to bring any form of life threaten harm to an inmate that is housed in this Unit.

The plaintiff was on a special diet that no other inmates were on in the Protective Management Unit. The plaintiff had been experiencing problems with his food tray coming to the Unit with his name written on the front of it and P.C. in big bold letters. The food trays were being brought by inmates in general population on open face food carts. The were not being secured in a food cart that has a security lock on it. The plaintiff had complained to the authorities of Lansing Correctional Facility that the defendant Terry Woods was not complying with procedures when it came to preparing the drinking beverages and food trays for the inmates housed in the Protective custody

unit. The defendant was suppost to supervise the preparing of the food trays and drinks and placed them in a food cart on wheels with a security lock on it till it was delivered to the Protective Custody Unit. The plaintiff's complaints fell on death ears and nothing was done to enforce the safety and protection of the food that was being prepared and delvered to the inmates in the Protective Custody Unit.

However, because the defendant failed to comply to such protective procedures for security reasons, the plaintiff became a victim that resulted in him being injuried. In November of 2006 the plaintiff had been given his diet at supper meal, the plaintiff had took a bite of his potatoes when something had cut up in to his upper gums, after a search in his potatoes in the presences of the unit officer an inmate found a half inch razor blade in the plaintiffs potatoes.

The plaintiff after exhausting his adminstrative remedies filed a Civil Rights Complaint pursuant to 42 USC §1983 and was granted informa pauperis to proceed without paying the filing fees. Furthermore, the plaintiff falls under the requirements of 28 USC §1915(g) and the courts decision to grant the plaintiff to proceed informa pauperis was proper.

## SUPPORTING ARGUMENTS

The plaintiff contends that the purpose of the Protective Management units in the Department of Coorections was to provide a safe environment for inmates such as the plaintiff that were at serious risk of harm and/or possible death by other inmates in the general population setting. At no time should an inmate in general population have any form of access to bring harm

to the plaintiff and/or anyother inmate in the Protective Management Unit. Such harm does not just mean to actually place their hands physically, but rather means in any form that would cause harm and/or injury to the plaintiff and/or anyother inmate that is housed in the protective custody unit. The plaintiff contends while he was confined in the P.C. Unit he had a Constitutional right under the Eighth Amendment to be served food that did not present immediate danger when he consumed it, see CAPPS v. ATIYEH, 559 F.Supp. 894 (D.C. Or. 1982).

This is not about a matter where some inmate accidentally dropped some foreign object in the food. This case is about the defendant failing to enforce sercity procedures when inmates in general population were preparing the food trays and drinking beverages for a secure protective custody unit. Wherefore, because the defendant was not enforcing such sercuity procedures of supervising the inmates in general population preparing the trays for the inmates in the P.C. Unit and then having them secured in a Food Cart on wheels with a security lock placed on the cart till it was delivered to the P.C. unit, but rather placed the trays on a open face food cart and left setting in food service unsupervised till it was delivered to the P.C. Unit by a inmate in general population.

What the defendant has done by not enforcing such security procedures has allowed the inmates in general population in food service to penentrate the security and protection of the plaintiff and other inmates in the Protective management unit.

Wherefore, because the defendant failed to enforce these proper security procedures in preparing the food trays for the inmates in the P.C. unit, place the plaintiffs' life in harms

way that had established him imminent harm. Wherefore, 28 U.S.C. 1915(g) states that the plaintiff may proceed informa pauperis under the following reasons;

"unless the prisoner is under imminent danger of serious physical injury."

The plaintiff argues that for an inmate in general population preparing his food and drink has unlimited access to place any form of dangerous objects such as razor blades in the plaintiffs food and after the incident took place and the plaintiff was injuried by the razor blade going through his upper gums, the defendant still refused and failed to enforce such security procedures when preparing the food for the inmates in the P.C. Unit.

When inmates in general population have free access to place dangerous objects and possibly poison in the plaintiffs' food and drink because the defendant is not enforcing security procedures to insure that the likehood of immediate danger when the plaintiff and/or other inmates in the P.C. unit consum it, does without question place the plaintiff and every inmate in the Protective Custody Unit under imminent danger of serious physical harm as defined in 28 U.S.C. §1915(g). Furthermore, to this date such security procedures are still not being enforced when general population inmates are preparing the food trays for the inmates in the P.C. Unit.

The plaintiff further contends, this is a secure unit under two montoring cameras and at no time will an inmate in general population have access to bring harm to an inmate confind in the P.C. Unit. If such security procedures were not enforced,

Page 6

there would be no use to have any Protective Management Units. The plaintiff was placed in that unit under a settlement agreement for his protection from the prison gang of Folk Nation and the Kansas City Cripts and his safety anf protection was put in jeopardy by the defendant because he refused and failed to enforce such safety and security procedures in preparing the food and drinks for the inmates in the P.C. unit and having the secured in a food cart lock box on wheels.

The plaintiff contends that the defendant is trying to convince this court that because he did not put the razor in the food he is not to blame and that he should not be considered as having personal participation in the injuries that the plaintiff endured when the razor went through his upper gums.

The plaintiff contends, had the defendant enforced the security procedures in supervising the inmates when preparing the food trays and drinks and then securing them in a locked food cart on wheels, then no he could not be considered as having personal participation in the razor blade ending up in the plaintiffs food. However, because the defendant did not enforce such security procedures, he was negligent, and his negligence cause the the plaintiff to consum a razor blade in his food that cause him injury. Furthermore, because the defendant further refused and failed to enforce such security procedures after the plaintiff was injuried, put the plaintiff in imminent danger of serious harm.

The plaintiff contends at the time of the filing of his complaint, the plaintiffs' life was infact in imminent danger of serious harm. The Court held in GIBBS v. ROMAN, 116 F.3d 83 (3rd. Cir. 1997):

"A complaint alleging imminent danger-even if brought after the prior dismissal of three frivolous complaints-must be credited as having satisfied the threshold criterion of §1915(g) unless the "imminent danager" element is challenged. If the defendant, after service, challenges the allegations of imminent danager (as Roman has done here on appeal), the district court must then determine whether plaintiffs' allegations of imminent danger is credible, <u>as of the time the alleged incident occurred, in order for the plaintiff to proceed on the merits i.f.p.</u>"

## CONCLUSION

The plaintiff contends that he has demonstrated to this court that he meets the requirements of 28 U.S.C. §1915(g) and that the courts ruling in the past to allow the plaintiff to proceed informa pauperis is infact proper and should remain as such throughout the civil action.

Furthermore, imminent danger of serious injury is defined as, such an appearance of threatened and impending injury as would put a reasonable and prudent man to his instant defense.

## RELIF REQUESTED

The plaintiff respectfully prays that this grant this cause of action in the plaintiffs behalf and enter an order that the plaintiff has satisfied the requirements of 28 U.S.C. §1915(g) and shall proceed informa pauperis as ordered on June 13, 2007. This for the best interest of the plaintiff and his Constitutional rights and for the sake of Judicial Economy.
It is so prayed.

I declared under the penality of perjury that the foregoing

Page 8

statement of facts are true and correct, this 25th day of February, 2009.

Respectfully Submitted
s/ [signature] Pro Se.,
Todd Carlton Smith #74848

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response to the Show Cause Order has been furnished by prepaid U.S. Postal Mail to: Mr. James S. Kreamer, 9393 W. 110th Street, Suite 500, Overland Park, Kansas 66210, this 25th day of February, 2009.

Respectfully
s/ [signature] Pro Se.,
Todd Carlton Smith #74848
Hutchinson Correctional Facility
Post Office Box 1568
Hutchinson, Kansas 67504-1568

c/copy

file/tcs